UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
RUI BENROS,                                              Index No.

                            Plaintiff,

                                                         **COMPLAINT**
            -against-

                                                         **Jury Trial Demanded**

PEPSICO, INC.
                          Defendants.
-------------------------------------------------------------
    Plaintiff, Rui Benros ("Plaintiff"), by his attorney, THE LAW OFFICE OF JON A.

STOCKMAN, as and for his Complaint, respectfully alleges the following:

## NATURE OF THE CASE

    1.    Plaintiff brings this action under Title VII of the Civil

Rights Act of 1964, 42 USC § 2000e *et seq.* (hereinafter "Title VII"), 42 U.S.C. § 1981

(hereinafter "Section 1981"), the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 *et

seq.* (hereinafter "the ADA"), the Age Discrimination in Employment Act ("the ADEA"), and

the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* (hereinafter "NYSHRL").

## JURISDICTION AND VENUE

    2.    This Court has subject matter jurisdiction over this action and jurisdiction over

Defendant Pepsico, Inc. (hereinafter referred to as "Defendant" or "Pepsi") pursuant to 28 U.S.C.

§ 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

    3.    This action properly lies in the United States District Court for the Southern

District of New York, pursuant to 28 U.S.C. § 1391, because the events giving rise to the claim

occurred within this judicial district.

## PROCEDURAL REQUIREMENTS

4.       Plaintiff timely filed a charge against Defendant on July 11, 2017, within three hundred (300) days of the discriminatory acts complained of herein.  Plaintiff's aforementioned charge relates to the allegations set forth in this Complaint.

5.       On or about June 14, 2018, the EEOC mailed Plaintiff a Right to Sue letter relating to Charge No. 520-2017-02806.  A copy of the Right to Sue letter is attached hereto as **Exhibit A**.

6.       This Complaint is being filed within ninety (90) days of Plaintiff's receipt of the June 14, 2018 Right to Sue Letter.

## THE PARTIES

7.       Plaintiff is a resident of the State of New York, County of Westchester.

8.       At all times relevant to the Complaint, Plaintiff was an "employee" of Defendant's within the meaning of Title VII, the ADA, the ADEA, and the NYSHRL.

9.       Defendant is a foreign business corporation incorporated in the State of North Carolina with its principal offices located at 700 Anderson Hill, Purchase, New York.  Defendant is licensed by the New York State Secretary of State to do business in the State of New York.

10.      At all times relevant to this Complaint, Defendant engaged in interstate commerce and/or in an industry affecting commerce.

11.      At all times relevant to this Complaint, Defendant was and is an "employer" within the meaning of each employment statute cited herein.

12.      At all times relevant to this Complaint, Defendant employed more than fifty (50) employees.

2

13.     At all times relevant to this Complaint, Defendant was Plaintiff's employer within the meaning of each employment law statute cited herein as *inter alia* Plaintiff's work hours, work place, and work assignments as well as hiring, firing, and supervision were controlled by Defendant.

14.     Although Defendant claimed in its response to Plaintiff's EEOC Charge that Plaintiff was not an employee, but rather a contractor assigned by a company called Cognizant Technology Solutions, Defendant is liable for the discriminatory actions described in this Complaint as a Joint Employer and/or under the Loaned Servant Doctrine.  Regardless of any technicalities, Defendant is liable as an employer because Plaintiff's work hours, work place, and work assignments as well as hiring, firing, and supervision were controlled by Defendant.

15.     Although Plaintiff was paid for his services to Defendant by a company called E-Solutions, Defendant is liable for the discriminatory actions described in this Complaint as a Joint Employer and/or under the Loaned Servant Doctrine.  Regardless of any technicalities, Defendant is liable as an employer because Plaintiff's work hours, work place, and work assignments as well as hiring, firing, and supervision were controlled by Defendant.

## FACTUAL ALLEGATIONS

16.     Plaintiff was born in Cape Verde.  Plaintiff is of Portuguese race/ancestry/ethnicity.  Plaintiff speaks with a foreign accent.

17.     Plaintiff was employed by Defendant as a Video Conference Analyst from in or around March 16, 2016 until he was unlawfully terminated on May 11, 2017.

18.     At the time of his termination, Plaintiff was fifty-eight (58) years old.

19.     Throughout his tenure with Defendant, Plaintiff was an exemplary employee who consistently received praise.

20.     Plaintiff had a number of health conditions during his employment with Defendant.

21.     Plaintiff had/has high cholesterol, diabetes, blood pressure issues (sometimes it is too low while other times it is too high), gastritis, and an enlarged liver (amongst other health issues).

22.     Plaintiff spoke to his immediate supervisor, Ian Fisher, about his high cholesterol and diabetes on at least one occasion prior to his termination.  Plaintiff spoke to Mr. Fisher about his gastritis on many occasions.

23.     For a significant period of time, Plaintiff consistently experienced dizziness, lightheadedness, shortness of breath, chest pain, chest pressure, and fatigue.

24.     On May 8, 2017, these aforementioned medical symptoms became intensified while Plaintiff was at work.  At one point, Plaintiff felt so weak and lightheaded that he felt like he was about to collapse.  Accordingly, Plaintiff went to see the Nurse at Pepsi's Corporate Office.  The Nurse took Plaintiff's blood pressure and gave him oxygen.  After doing so, the Nurse became alarmed because Plaintiff's blood pressure was very low.  The Nurse then proceeded to call an ambulance.  It was apparent that the Nurse was concerned Plaintiff had suffered or was going to suffer a heart attack.  In fact, at one point, Plaintiff requested that he be allowed to walk to his desk, but the Nurse was so concerned about Plaintiff's condition that she wouldn't even let Plaintiff stand up.

25.     After the EMTs arrived at Pepsi's Corporate Office, Plaintiff was carried out of the Office on a stretcher and was transported to White Plains Hospital (at Pepsi's insistence).  The Hospital advised Plaintiff to stay overnight.  Although an overnight hospital stay was necessary, Plaintiff couldn't afford it, and therefore he left the Hospital against medical advice.

26.     After Plaintiff left the Hospital, he consulted with his personal doctor, who advised Plaintiff not to return to work for at least the remainder of the week.  Plaintiff informed Defendant that he would not be able to return to work the week of May 8th based on the advice of his doctor.   Plaintiff was extremely concerned about missing work that week because Defendant's IT Department was conducting a systems upgrade, which is a very labor-intensive project.

27.     Plaintiff's direct boss, Ian Fisher from Pepsi, saw Plaintiff being taken out of Pepsi's Corporate Office on a stretcher.  As Plaintiff was being carried out, Mr. Fisher asked Plaintiff whether he was having problems with his stomach again.  Plaintiff responded that he believed he was having heart issues.  Mr. Fisher told Plaintiff to take it easy and that everything would be okay.

28.     Unfortunately, everything would not be okay.  On May 11, 2017, (three (3) days after being carried out of Pepsi's Corporate Office on a stretcher and while Plaintiff was still in the process of undergoing medical testing), Plaintiff was advised that Pepsi had elected to terminate his employment due to performance related reasons.  Plaintiff was not provided with any specifics as to what issues Pepsi had with his performance.

29.     Defendant's alleged justification for terminating Plaintiff's employment is false.

30.     As mentioned, Plaintiff consistently received praise from his superiors at Pepsi and was never counseled about alleged performance deficiencies.

31.     Significantly, prior to Plaintiff's termination, he earned a raise.

32.     Up until Pepsi submitted its Position Statement in response to Plaintiff's EEOC Charge of Discrimination in February, 2018, the only information given to Plaintiff with respect to his termination was that he was being terminated due to performance related reasons.  No

specifics were provided.  Nine (9) months after Plaintiff's termination, Defendant claimed for the first time in its Position Statement that it terminated Plaintiff employment for three (3) reasons; (1) Pepsi alleged Plaintiff had an abrasive communication style; (2) Pepsi alleged Plaintiff failed to arrive timely to scheduled executive-level meetings; and (3) Pepsi alleged Plaintiff demonstrated poor foundational knowledge.

33.    With respect to Pepsi's allegation that Plaintiff had an abrasive communication style, Pepsi did not elaborate as to what it meant, nor did it provide any examples.  Upon information and belief, Pepsi claimed Plaintiff had an abrasive communication style because he spoke with a foreign accent.  Notably, while Plaintiff was working for Pepsi, no one complained to him about his alleged "abrasive communication style."

34.    With respect to Pepsi's allegation that he failed to arrive timely to scheduled executive-level meetings, it is important to note that the two other Video Conference Analysts who reported to Ian Fisher (Alan Cintron and Ali Hussan) arrived late to a number of scheduled executive-level meetings and sometimes failed to show up to such meetings at all.  However, Pepsi did not terminate or take any disciplinary action against Mr. Cintron or Mr. Hussan for arriving late to scheduled executive-level meetings or for failing to show up to such meetings. Upon information and belief, Mr. Cintron is a non-Portuguese Hispanic-American in his thirties (30s), who did not suffer any disability known to Defendant.  Upon information and belief, Mr. Hussan is a Pakistani individual in his forties (40), who did not suffer any disability known to Respondents.  Unlike Plaintiff, Mr. Hussan did not speak with a foreign accident.

35.    With respect to Pepsi's allegation that Plaintiff demonstrated poor foundational knowledge of technical video-conferencing services, Pepsi did not elaborate as to what it meant by such phrase, nor did it provide any examples.  Notably, while Plaintiff was working for Pepsi,

no one complained to him about his alleged poor foundational knowledge of technical video-conferencing services.  To the contrary, Plaintiff was praised by management for his work.

36.     Upon information and belief, Defendant replaced Plaintiff with a non-Portuguese individual named John Ciccone, who upon information and belief is significantly younger than Plaintiff and did not have any disability known to Defendant.

37.     As a result of the dizziness, lightheadedness, shortness of breath, fatigue, and blood pressure issues that became intensified on May 8, 2017 and have continued through the present, Plaintiff's ability to perform a number of major life activities (such as his ability to work, breathe, lift, crawl, run, exercise, and perform basic household chores) was substantially impaired.

38.     The medical condition(s) that caused the May 8, 2017 episode has also substantially impaired some of Plaintiff's major bodily functions.  For example, said medical condition(s) substantially impaired Plaintiff's respiratory system and his blood pressure.

### FIRST  CLAIM FOR RELIEF
*(Violation of Title VII-Race/National Origin Discrimination)*

39.     Plaintiff repeats and realleges each and every allegation contained herein.

40.     Defendant violated Title VII by terminating Plaintiff's employment because of his race/ethnicity/ancestry and/or national origin.

41.     Defendant violated Title VII because Plaintiff's race/ethnicity/ancestry and/or national origin was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

42.     As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered and continues to suffer substantial loss of earnings, and related employment benefits.

7

43.    As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

44.    Plaintiff is entitled to an award for damages for his past and future economic loss, and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

45.    Due to the severity of Defendant's conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial.  By terminating Plaintiff based on his race/ethnicity/ancestry and/or national origin, Defendant and its agents knowingly violated the relevant employment laws and/or acted in reckless disregard of Plaintiff's rights under the relevant employment laws.  Upon information and belief, Defendant included anti-discrimination policies in their employee manual and posted the anti-discrimination notices required by law.

### SECOND  CLAIM FOR RELIEF
*(Violation of the ADA-Retaliation)*

46.    Plaintiff repeats and realleges each and every allegation contained herein.

47.    Plaintiff engaged in ADA protected activity by requesting and taking disability leave.

48.    Defendant terminated Plaintiff's employment in retaliation for his having engaged in the ADA protected activity discussed in this Complaint.

49.    As a proximate result of Defendant's retaliatory actions, Plaintiff has suffered and continues to suffer substantial loss of earnings, and related employment benefits.

50.    As a proximate result of Defendant's retaliatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

51.     Plaintiff is entitled to an award for damages for his past and future economic loss, and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

52.     Due to the severity of Defendant conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial.  By retaliating against Plaintiff for engaging in ADA protected activity, Defendant and its agents knowingly violated the relevant employment laws and/or acted in reckless disregard of Plaintiff's rights under the relevant employment laws.  Upon information and belief, Defendant included anti-discrimination policies in their employee manual and posted the anti-discrimination notices required by law.

### THIRD CLAIM FOR RELIEF
*(Violation of the ADA by Defendant-Discrimination based on Plaintiff's Disabilities, Perceived Disabilities, and/or Record of Having Disabilities)*

53.     Plaintiff repeats and realleges each and every allegation contained herein.

54.     Defendant violated the ADA by terminating Plaintiff because of one or more of Plaintiff's aforementioned disabilities, because Defendant perceived Plaintiff to be disabled based on one or more of Plaintiff's aforementioned medical conditions, and/or because of Plaintiff's record of being disabled based on one or more of his aforementioned medical conditions.

55.     Defendant violated the ADA because Plaintiff's aforementioned disabilities/perceived disabilities/ and/or record of having disabilities were motivating factors in Defendant's decision to terminate Plaintiff's employment.

56.     As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered and continues to suffer substantial loss of earnings, and related employment benefits.

57.     As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

58.     Plaintiff is entitled to an award for damages for his past and future economic loss, and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

59.     Due to the severity of Defendant's conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial.  By terminating Plaintiff, Defendant and its agents knowingly violated the relevant employment laws and/or acted in reckless disregard of Plaintiff's rights under the relevant employment laws.  Upon information and belief, Defendant included anti-discrimination policies in their employee manual and posted the anti-discrimination notices required by law.

### FOURTH CLAIM FOR RELIEF
*(Violation of the ADEA by Defendant-Discrimination based on Plaintiff's Age)*

60.     Plaintiff repeats and realleges each and every allegation contained herein.

61.     Defendant violated the ADEA by terminating Plaintiff because of his age.

62.     As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered and continues to suffer substantial loss of earnings, and related employment benefits.

63.     As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

64.     Plaintiff is entitled to an award for damages for his past and future economic loss, and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

65.     Because Defendant's violation of the ADEA was willful, Plaintiff is entitled to ADEA liquidated damages in an amount equal to his backpay and frontpay awards.

**FIFTH CLAIM FOR RELIEF**
*(Violation of Section 1981 by Defendant-Discrimination based on Plaintiff's Race/Ethnicity/Ancestry)*

66.     Plaintiff repeats and realleges each and every allegation contained herein.

67.     Defendant violated Section 1981 by terminating Plaintiff's employment because of his race/ethnicity/ancestry.

68.     Defendant violated Section 1981 because Plaintiff's race/ethnicity/ancestry was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

69.     As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered and continues to suffer substantial loss of earnings, and related employment benefits.

70.     As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

71.     Plaintiff is entitled to an award for damages for his past and future economic loss, and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

72.     Due to the severity of Defendant's conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial.  By terminating Plaintiff based on his race/ethnicity/ancestry and/or national origin, Defendant and its agents knowingly violated the relevant employment laws and/or acted in reckless disregard of Plaintiff's rights under the relevant employment laws.  Upon information and belief, Defendant included anti-discrimination policies in their employee manual and posted the anti-discrimination notices required by law.

**SIXTH CLAIM FOR RELIEF**
*(Violation of the NYSHRL by Defendant-Discrimination based on Plaintiff's Race/Ethnicity/Ancestry and/or National Origin)*

73.     Plaintiff repeats and realleges each and every allegation contained herein.

74.     Defendant violated the NYSHRL by terminating Plaintiff's employment because of his race/ethnicity/ancestry and/or national origin.

75.     Defendant violated the NYSHRL because Plaintiff's race/ethnicity/ancestry and/or national origin was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

76.     As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered and continues to suffer substantial loss of earnings, and related employment benefits.

77.     As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

78.     Plaintiff is entitled to an award for damages for his past and future economic loss, and an award for compensatory damages in an amount to be determined at trial, plus costs, and pre and post judgment interest.

**SEVENTH CLAIM FOR RELIEF**
*(Violation of the NYSHRL by Defendant-Discrimination based on Plaintiff's Disabilities, Perceived Disabilities, and/or Record of Having Disabilities)*

79.     Plaintiff repeats and realleges each and every allegation contained herein.

80.     Defendant violated the NYSHRL by terminating Plaintiff because of one or more of Plaintiff's aforementioned disabilities, because Defendant perceived Plaintiff to be disabled based on one or more of Plaintiff's aforementioned medical conditions, and/or because of

Plaintiff's record of being disabled based on one or more of his aforementioned medical conditions.

81.     Defendant violated the NYSHRL because Plaintiff's aforementioned disabilities/perceived disabilities/ and/or record of having disabilities were motivating factors in Defendant's decision to terminate Plaintiff's employment.

82.     As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered and continues to suffer substantial loss of earnings, and related employment benefits.

83.     As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

84.     Plaintiff is entitled to an award for damages for his past and future economic loss, and an award for compensatory damages in an amount to be determined at trial, plus costs, and pre and post judgment interest.

### EIGHTH CLAIM FOR RELIEF
*(Violation of the NYSHRL by Defendant-Discrimination based on Plaintiff's Age)*

85.     Plaintiff repeats and realleges each and every allegation contained herein.

86.     Defendant violated the NYSHRL by terminating Plaintiff because of his age.  As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered and continues to suffer substantial loss of earnings, and related employment benefits.

87.     Defendant violated the NYSHRL because Plaintiff's age was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

88.     As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

13

89.    Plaintiff is entitled to an award for damages for his past and future economic loss, and an award for compensatory damages in an amount to be determined at trial, plus costs, and pre and post judgment interest.

### DEMAND FOR JURY TRIAL

90.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

**WHEREFORE**, as a result of the unlawful conduct and actions of the Defendant herein alleged, Plaintiff demands judgment as follows:

i.    declaring Defendant violated the aforementioned statutes;

ii.    awarding equitable relief, including the reinstatement of Plaintiff;

iii.    awarding emotional distress damages in the estimated sum of at least $1,000,000.00;

iv.    awarding back pay and front pay, and affording all benefits that would have been afforded Plaintiff but for Defendants' unlawful actions in the estimated sum of at least $1,000,000.00;

v.    awarding Plaintiff punitive damages in the estimated sum of at least $2,000,000.00;

vi.    awarding Plaintiff ADEA liquidated damages in the estimated sum of at least $1,000,000.00;

vii.    awarding Plaintiff's cost of this suit;

viii.    awarding reasonable attorneys' fees;

ix.    awarding pre- and post-judgment interest; and

x.     awarding such other and further relief as the court deems just and proper.

Dated:  New York, New York
         September 5, 2018

*Respectfully submitted*,
**THE LAW OFFICE OF**
**JON A. STOCKMAN**

By:     /S/Jon A. Stockman
        Jon A. Stockman, Esq. (JS6246)
        32 Broadway, Suite 1710
        New York, New York 10004
        (516) 547-6418 telephone
        jstockman@yournycattorney.com
        Attorney for Plaintiff, Rui Benros